UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO:  10-213 |
| v. | * | SECTION: "L" |
| MELVIN WILLIAMS<br>MATTHEW DEAN MOORE | * | |
| | * | |

### MOTION *IN LIMINE* TO PRECLUDE ANY REFERENCE TO PRIOR DECLINATIONS TO PROSECUTE

**NOW INTO COURT** comes the United States of America, appearing through the undersigned attorneys, and respectfully files its Motion *In Limine* to Preclude Any Reference to Prior Declinations to Prosecute.  Past decisions not to prosecute – by the FBI in 2006 and by the Office of the District Attorney of New Orleans in 2007 and 2008 – are irrelevant to the jury's province in this case, constitute inadmissible hearsay, and are excludable under the Federal Rules as more prejudicial than probative.

**I.   Background**

On July 30, 2005, New Orleans Police Department (NOPD) Officers Melvin Williams and Matthew Dean Moore seized Raymond Robair on Dumaine Street.  Neighborhood residents watched Officer Williams kick Robair and strike him repeatedly with a baton.  Officers Williams and Moore later transported Robair to Charity Hospital.  After Officers Williams and Moore left

˘1˘

the hospital, doctors found that blunt force trauma had ruptured Robair's spleen, triggered massive internal bleeding, and caused his death.

Hours after Robair's death, Williams and Moore filed a medical incident report claiming that they had seen a black male grab his chest and fall to the ground on Dumaine Street. The officers stated that they had been unable to identify this black male or determine what medical care he needed, so they transported him to the emergency room at Charity Hospital.

In the wake of Robair's death, neighborhood residents reported having seen Officer Williams beat Robair on Dumaine Street. NOPD and the FBI subsequently opened a concurrent investigation. An NOPD report authored by Sergeant Gerard Dugue cleared the officers of any wrongdoing. In 2006, the FBI also closed its file on Robair's death. The District Attorney of New Orleans evaluated the evidence in its possession in 2007 and again in 2008, but did not pursue criminal charges. In 2008, the FBI reopened its file and began uncovering evidence that gave rise in 2010 to the federal civil rights and obstruction charges now before this Court.

Melvin Williams and Matthew Dean Moore currently face charges that arise out of the beating death of Raymond Robair and the cover up that followed. Defendant Williams is charged with using excessive force in violation of 18 U.S.C. § 242, and both defendants are charged with violating 18 U.S.C. § 1519 by falsifying an official record in connection with a federal criminal investigation. In addition, defendant Moore is charged with making a false statement to federal investigators, in violation of 18 U.S.C. § 1001.

### A. The Federal Bureau of Investigation closed its file on the death of Raymond Robair in 2006, but reopened the case in 2008.

On August 1, 2005, the New Orleans Division of the FBI opened an investigation into allegations that NOPD officers were responsible for the July 30, 2005, beating death of Raymond

Robair. FBI agents investigated the case jointly with NOPD officers, including lead investigator Sergeant Gerard Dugue. Relying on the work of Sergeant Dugue, the FBI closed its Robair file in 2006. The Criminal Section of the Civil Rights Division of the Department of Justice refused, however, to close its case file. In 2008, the FBI reopened its file and secured witness statements and other evidence that had not been previously identified by state or federal investigators. This new evidentiary material ultimately gave rise to federal charges against Williams and Moore.1

> **B. The Office of the District Attorney considered evidence related to the death of Raymond Robair, but chose not to pursue criminal charges in 2007 and 2008.**

Dr. Paul McGarry of the Orleans Parish Coroner's Office conducted an autopsy in 2005 and concluded that there was no evidence that Robair had been beaten. McGarry maintained that Robair's injuries were caused by an accidental slip and fall on a city street. In 2007, the Office of the District Attorney of New Orleans decided that this autopsy exonerated Officers Williams and Dean Moore. The Office of the District Attorney accordingly concluded on December 20, 2007, that no criminal charges would be filed in state court against Moore or Williams.

In 2008, Robert M. White, Chief of the Public Corruption Unit for the Office of the District Attorney, reviewed an independent autopsy by Dr. Kris Sperry, who had rejected McGarry's work and had concluded that Robair's death was a homicide caused by blunt force trauma. After

---

1     At the same time, federal authorities charged Sergeant Gerard Dugue with obstruction-related charges for his efforts to cover up the use of excessive force by NOPD officers in another 2005 incident that left two civilians dead and four people seriously injured. See United States v. Bowen, et al., Crim. No. 10-204 (charging Dugue with violations of 18 U.S.C. §§ 241, 1001, 1512, and 1519). In Bowen, Dugue is alleged to have misled NOPD supervisors, the District Attorney's Office, and FBI agents when he included in an NOPD report lies from his fellow officers. Dugue also is alleged to have aided another NOPD investigator in making false entries in a police report. Since Dugue led the joint NOPD-FBI investigation into Robair's death, any reference to the FBI's decision to close its file in 2006 would necessitate the introduction of evidence related to Dugue's efforts to obstruct federal investigations into the alleged use of excessive force by NOPD officers. To cite only one example, the indictment in Bowen indicates that there is probable cause to believe that Dugue presented false evidence and misled both FBI agents and the District Attorney in 2005.

reviewing Sperry's work, White decided that there was "ample evidence to make a prima facie case in a civil lawsuit or federal action under Title 42 § 1983," but not enough to justify charging Williams and Moore. Ex. 1, Letter from Robert M. White to NOPD Superintendent Warren C. Riley, June 27, 2008. White accordingly informed NOPD Superintendent Warren Riley on June 27, 2008, that state authorities would not file criminal charges against Williams and Moore.

II. **Admitting Evidence Of The 2006 FBI File Closure Or The District Attorney's Declination Would Invade The Province Of The Jury**

The jury in the instant matter will be asked to analyze the relevant, admissible evidence put before it, apply that evidence to the charged federal statutes, and determine whether the defendants violated federal law. Whatever determinations another sovereign, in this case the District Attorney, made years ago when it reviewed a different body of evidence and considered its application to a different set of statutes is entirely irrelevant on the issues presented to the jury at trial. It is similarly irrelevant that the FBI, acting without the benefit of the evidence that will be presented to the jury here, closed its file on Robair in 2006. This is particularly true here, where another federal agency, the Civil Rights Division, maintained an open file. Since neither the FBI's case closure in 2006 nor the District Attorney's opinion in 2007 and 2008 are relevant to the matter at trial, they are inadmissible under the Federal Rules. See Fed.R.Evid. 402 ("Evidence which is not relevant is not admissible.").

A. **Acquittals, Dismissals, And Declinations Are Irrelevant**

A decision not to prosecute a case has no probative value because it is highly discretionary and demonstrates nothing more than the opinion of the prosecutor. See Goldstein v. City of Long Beach, 481 F.3d 1170, 1173 (9th Cir. 2007); J.W. v. City of Oxnard, 2008 WL4810298 at *22 (C.D. Cal.) (finding that District Attorney's decision not to prosecute had "no probative value"). The

opinion of a prosecutor or an investigator may be based, at least in part, on an assessment of factors that are unrelated to an evaluation of a suspect's guilt or innocence. A state prosecutor could determine, for instance, that federal authorities might more effectively investigate a particular crime. Alternatively, a federal law enforcement agent might decide that, in the wake of Hurricane Katrina, scarce federal resources had to be diverted from an investigation of an alleged beating to other matters.

An investigator's decision to close a file and a prosecutor's declination of prosecution are far less probative than an acquittal by a jury. It is noteworthy, therefore, that the courts have routinely refused to admit evidence of prior acquittals. See, e.g., United States v. Gricco, 277 F.3d 339, 352 (3d Cir. 2002) ("evidence of prior acquittals is generally inadmissible") (citing cases from the 1st, 2nd, 5th, 6th, 7th, 8th, and D.C. Circuits).

In United States v. Kerley, for example, the appellant challenged the district court's exclusion of evidence that he had been acquitted in state court for the same conduct. 643 F.2d 299 (5th Cir. 1981). In rejecting appellant's challenge, the Fifth Circuit held that "evidence of a prior acquittal is *not relevant* because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." Id. at 300 (emphasis added).

This issue was raised again in United States v. De La Rosa, 171 F.3d 215 (5th Cir. 1999). Upholding Kerley's finding that evidence of a prior acquittal was irrelevant, the Fifth Circuit noted that the First, Second, Seventh, Eighth, Tenth, Eleventh, and D.C. Circuits had all "overwhelmingly" agreed that evidence of prior acquittals was generally inadmissible. Id. at 220 (footnote omitted). The Fifth Circuit further noted that it was aware of no contrary authority. Id.

Whatever analogies one might draw between declinations, case closures, and acquittals, it is beyond cavil that if evidence of a prior acquittal is irrelevant, there is no basis in law to argue for the admission of *less* relevant evidence such as an opinion by a prosecutor or an investigator. Thus, this Court should preclude the defendants from making any reference either in opening statements, in arguments, or in the examination of witnesses, to the fact that: (1) state authorities did not prosecute Williams and Moore; and (2) the FBI at one point closed its file on Robair's death. It would be improper to allow the defendants to attempt to create any inference that inaction by state and federal authorities from 2005-2008 should have any bearing whatsoever on the jury's decision in this case.

### B. Federal And State Authorities Acting Prior To 2009 Did Not Have Possession Of Evidence Uncovered By the FBI in 2009-10

While the courts have made it clear that acquittals, dismissals, and declinations are irrelevant generally, it is worth emphasizing that dispositions raised in this motion have significantly less probative value than those identified in the aforementioned precedent. In this case, the FBI and District Attorney made their decisions based on a body of evidence that was produced in large part by an officer who has since proven to be corrupt, and that differs dramatically from the proof that the government will present at trial.

Consider, for instance, that the state declination occurred in 2008, approximately two years *before* federal authorities completed their investigation into Robair's death. The FBI closed its case in 2006, two years before the District Attorney's declination. Authorities acting in 2006, 2007, and 2008 clearly did not have access to the evidentiary record developed by the United States in 2009-10. Since 2008, the United States has obtained statements from eyewitnesses who saw defendant Williams use excessive force against Robair. It also has secured statements from

medical professionals who spoke to the defendants at Charity Hospital, evaluated Robair's injuries, and then treated him. The testimony these individuals provided in 2010 ultimately gave rise to the federal charges now asserted against Williams and Moore.

In addition, it should be noted that state authorities acting in 2008 assessed the evidence in their possession as it applied to the *state* statutes enforced by the District Attorney of New Orleans. This assessment of state criminal law has no relevance to the federal statutes at issue here. The District Attorney could not, for example, render a binding opinion regarding any *federal* criminal statutes that might have been violated by Williams and Moore. Finally, the District Attorney obviously could not consider the conduct charged in Count III of the instant matter, as the alleged violation of 18 U.S.C. § 1001 set forth therein occurred in March of 2010, nearly two years after Mr. White had announced that state authorities would not file charges against Moore and Williams.

Against that backdrop, the 2006 file closure by the FBI and the 2008 declination by the District Attorney have even less probative value than the declinations, dismissals, and acquittals the courts have deemed irrelevant in other cases. The United States hereby moves to preclude any reference to the irrelevant opinions of the District Attorney in 2007-08 and the FBI in 2006.

### III. Both The Temporary File Closure And The Decision Not To Prosecute In State Court Constitute Inadmissible Hearsay

The hearsay rule also bars the defendants from referencing at trial either the FBI file closure or the state declination. It is well-settled that any evidence of a defendant's prior acquittal is hearsay not otherwise exempt from the operation of the hearsay rule. United States v. De La Rosa, 171 F.3d at 219 ("'a judgment of acquittal is hearsay' not otherwise exempt 'from the operation of the hearsay rule.'") (footnote omitted); see also United States v. Sanchez, 992 F.2d 1143, 1160 (11th Cir. 1993) ("Evidence of an acquittal is generally inadmissible because it is hearsay and not

˜7˜

covered by any exception to the rule against hearsay."); United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2003) ("[J]udgments of acquittal are hearsay."); United States v. Gricco, 277 F.3d 399, 352 (3d Cir. 2002) (same).  As a result, the defendants should be precluded by the hearsay rule from introducing any reference to any decision short of an acquittal, including both the FBI's file closure and the District Attorney's determination not to prosecute.

**IV.     Evidence Of File Closure Or Declination Is Excludable Under Federal Rule of Evidence 403**

Even if an authority's decision not to prosecute could be considered relevant, it would not be admissible under Fed.R.Evid. 403 "because its probative value, if any, would be "'substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury.'"  United States v. De La Rosa, 171 F.3d at 220 (footnote omitted); (internal quotation omitted); see also United States v. Kerley, 643 F.2d at 301 (upholding exclusion of acquittal under Rule 403).2

The submission of a prior dismissal, file closure, or prosecutorial declination has the potential to confuse and mislead the jurors into thinking they need not consider the evidence they are presented because a prosecutor, investigator, or another jury already has determined a defendant is not guilty.  See, e.g., United States v. Scheffer, 523 U.S. 303, 313-14 (1998) (questioning whether polygraph evidence would cause juries to give "excessive weight to the opinions of a polygrapher," leading them to "abandon their duty to assess credibility and guilt."); United States v. Marrero-Ortiz, 160 F.3d 768, 775 (1st Cir. 1998) (Upholding exclusion of dismissal in prior case

---

2  Kerley, like this case, involved a police officer defendant charged with a civil rights violation.  The charge was based on an incident in which the defendant beat a handcuffed arrestee.  The defendant had previously been acquitted in state court of a battery charge for the same incident. 643 F.3d at 300.  The district court granted the motion to exclude any evidence of the state verdict.  On appeal from his federal conviction, the defendant argued that exclusion of his state acquittal constituted reversible error.  The Fifth Circuit disagreed, finding that the probative value of evidence of Kerley's acquittal was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Id. at 301.

"since it may have served to confuse the jury rather than assist it." Evidence of a prior dismissal "does not prove innocence . . . After all, cases are dismissed for a variety of reasons, many of which are unrelated to culpability."); United States v. Thomas, 114 F.3d 228, 250 (D.C. Cir. 1997) (finding judgments of acquittal properly excluded as they may "be more prejudicial than probative"); United States v. Delgado, 903 F.2d 1495, 1499 (11th Cir. 1990) (same); Rabon v. Great Southwest Fire Ins., 818 F.2d 306, 309 (4th Cir. 1987) (recognizing the "hornbook principle" that evidence of nonprosecution or acquittal in a related matter "goes directly to the principal issue before the jury and is highly prejudicial"); United States v. Morel, -- F.Supp.2d --, 2010 WL 4606403 *8 (E.D.N.Y.) (collecting cases) (Allowing a defendant to present evidence that the government initially declined his prosecution presents a substantial risk of confusing and misleading the jury.); J.W. v. City of Oxnard, 2008 WL4810298 at *22 (C.D. Cal.)) (Any "minimal probative value" that a District Attorney's decision not to prosecute might have is "outweighed by the possibility that jurors unfamiliar with the judicial process might be misled.").

This "danger of prejudice, confusion of the issues, or misleading of the jury" is particularly serious here, where the principal investigator was corrupt and the authorities who evaluated the investigator's report did not have access to the evidentiary material that will be presented to the jury in the instant matter. Introducing evidence of the District Attorney's opinion or the FBI's file closure also would unnecessarily lead to an extended and inherently confusing mini-trial involving a host of issues that have no bearing on the matters under trial. For example, consideration of the FBI file closure and the state declination would require an examination of the internal review processes for the District Attorney of New Orleans, the FBI, and the Justice Department; the differing standards and considerations that apply to the prosecutive and jury functions; the distinctions among the bodies of evidence relevant to those different functions; and the dual

state-federal prosecutive possibilities. Discussion of these subjects would create a substantial risk that a jury unfamiliar with issues related to federalism, agency decisionmaking, or the judicial process would be confused and misled. Any reference to either the 2006 file closure by the FBI or District Attorney's decision not to prosecute should be excluded because any probative value such material might have is substantially outweighed by the probability that its admission will confuse and divert the jury from its duty to evaluate the evidence presented at trial.

## CONCLUSION

Evidence of prior closures and declinations should be excluded because the evidence is irrelevant; because those decisions were based on incomplete evidence; and because the evidence is far more prejudicial than probative. Accordingly, the government moves for a pretrial order entirely precluding the parties and the witnesses from mentioning, either directly or indirectly, the FBI's case closure or the District Attorney's decision not to prosecute Williams and Moore.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY

  /s/ Forrest Christian
FORREST CHRISTIAN
JARED FISHMAN
Criminal Section, Civil Rights Division
United States Department of Justice
Telephone: (202) 514-8376
Facsimile:  (202) 514-8336

JORDAN GINSBERG
Illinois Bar Roll No. 6282956
Assistant United States Attorney
Hale Boggs Federal Building
500 Poydras Street, Suite 210B
New Orleans, Louisiana 70130
Telephone: (504) 680-3000
Facsimile:  (504) 589-4510

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2011, the attached document was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

      /s/ Forrest Christian
     Forrest Christian
     Special Litigation Counsel